Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAYS INN WORLDWIDE, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MANI HOTELS, LLC and MEHULKUMAR K. AHIR,**<br><br>**Defendants.** | Civil Action No.: 22-7520 (ES) (CLW)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff Days Inn Worldwide, Inc.'s ("Plaintiff") unopposed motion for default judgment against defendants Mani Hotels, LLC ("MH") and Mehulkumar K. Ahir ("Ahir") (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b). (D.E. No. 16 ("Motion" or "Mot.")). Having considered Plaintiff's unopposed submission, the Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Plaintiff's unopposed Motion (D.E. No. 16) is **GRANTED IN PART and RESERVED IN PART**.

**I.     BACKGROUND**

   **A.     Factual Background[1]**

Plaintiff is a corporation organized and existing under the laws of Delaware and has its principal place of business in Parsippany, New Jersey. (D.E. No. 1 ("Complaint" or "Compl.") ¶ 1). MH is a limited liability company organized and existing under the laws of Arizona and has

---

[1] The factual background is taken from the allegations in the Complaint. For purposes of the instant Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

1

its principal place of business in Phoenix, Arizona. (*Id.* ¶ 2). Ahir is the sole member of MH and is a citizen and resident of California. (*Id.* ¶¶ 3–4).

Plaintiff brings this breach of contract action against Defendants. (*See generally* Compl.). On or about April 18, 2017, MH entered into two agreements with Plaintiff: (i) a franchise agreement to operate a 50-room Days Inn® lodging facility located at 2900 East Van Buren Street in Phoenix, Arizona (the "Facility") for a fifteen-year term (the "Franchise Agreement"), and (ii) a SynXis subscription agreement to govern "MH's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to same" (the "SynXis Agreement"). (*Id.* ¶¶ 9–10, Ex. A & Ex. B).

Pursuant to both the Franchise Agreement and the SynXis Agreement, MH agreed "to make certain periodic payments to [Plaintiff] for royalties, system assessments, taxes, interest, SynXis Fees, and other fees (collectively, 'Recurring Fees')." (*Id.* ¶ 12, Ex. A § 7 & Ex. B § 5). To calculate the Recurring Fees, MH agreed to prepare and submit monthly reports to Plaintiff disclosing, among other things, the amount of gross room revenue earned by MH in the preceding month. (*Id.* ¶ 14 & Ex. A § 3.6.4). MH also agreed to maintain accurate financial information relating to the gross room revenue and to permit Plaintiff to examine, audit, and make copies of that information. (*Id.* ¶ 15 & Ex. A §§ 3.6 & 4.8). Additionally, MH agreed in the Franchise Agreement "that interest is payable 'on any past due amount payable to [Plaintiff] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.'" (*Id.* ¶ 13 & Ex. A § 7.3).

Pursuant to Section 11.2 of the Franchise Agreement, Plaintiff could terminate the Franchise Agreement, with notice to MH, if MH (i) "discontinued operating the Facility as a Days Inn® guest lodging establishment" and/or (ii) "lost possession or the right to possession of the

Facility." (*Id.* ¶ 16 & Ex. A § 11.2). MH agreed that in the event the Franchise Agreement was terminated pursuant to Section 11.2, they would pay liquidated damages to Plaintiff according to the formula specified in the Franchise Agreement. (*Id.* ¶ 17 & Ex. A § 12.1). MH also agreed that in the event of a dispute, "the non-prevailing party would 'pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under the [Franchise] Agreement." (*Id.* ¶ 18 & Ex. A § 17.4 (alterations in original)).

Separately, Ahir provided Plaintiff with a guaranty of MH's obligations under the Franchise Agreement (the "Guaranty"). (*Id.* ¶ 19 & Ex. C). Among other things, Ahir agreed "that upon a default under the Franchise Agreement, he would 'immediately make each payment and perform or cause [MH] to perform, each unpaid or unperformed obligation of [MH] under the [Franchise] Agreement." (*Id.* ¶ 20 (alterations in original) & Ex. C). Ahir also "agreed to pay the costs, including reasonable attorneys' fees, incurred by [Plaintiff] in enforcing its rights or remedies under the Guaranty or the Franchise Agreement." (*Id.* ¶ 21 & Ex. C; *see also id.* ¶ 18 & Ex. A § 17.4).

MH, through its counsel via letter dated May 25, 2022, advised Plaintiff that it closed the Facility as of April 15, 2022.[2] (*Id.* ¶ 22). By letter dated June 28, 2022, Plaintiff "acknowledged MH's unilateral termination of the Franchise Agreement, effective April 15, 2022, and advised MH that it was required to pay to [it] as liquidated damages for premature termination the sum of $209,202.84" pursuant to Section 12.1 of the Franchise Agreement, in addition to all outstanding Recurring Fees through the termination date. (*Id.* ¶ 23 & Ex. D). Plaintiff has complied with all of its obligations under the Franchise Agreement. (*Id.* ¶ 25). To date, Defendants have not paid

---

[2] Plaintiff did not attach a copy of this letter as an exhibit to the Complaint, nor has Plaintiff otherwise submitted a copy of this letter to the Court.

3

Plaintiff the outstanding liquidated damages and Recurring Fees Plaintiff alleges it is owed. (*Id.* ¶ 24).

### B. Procedural History

On December 27, 2022, Plaintiff initiated this action by filing a complaint against Defendants, alleging breach of contract and unjust enrichment claims. (*See generally* Compl.). On the same day, a summons issued for Defendants. (D.E. No. 4). On January 24, 2023, the summons was returned as executed against both Defendants, reflecting that Ahir was personally served via his spouse at their residence in Yorba Linda, California on January 11, 2023, and that Mani Hotels, LLC was personally served via its registered agent Suraj Bhakta at Bhakta & Associates, PLLC in Peoria, Arizona on January 17, 2023. (D.E. No. 5).

On October 4, 2023, Plaintiff filed a motion to approve a consent judgment, requesting the Court enter a consent judgment against Defendants for violating the payment terms of a confidential settlement agreement. (D.E. No. 7). On June 4, 2024, the Court filed a Letter Order denying without prejudice Plaintiff's motion to approve a consent judgment on the basis that it was not convinced it had the authority to enter such a judgment. (D.E. No. 9). In that Letter Order, the Court ordered Plaintiff to show cause, by way of a renewed motion within thirty days of the date of the Letter Order, why this Court has the authority to enforce the terms of the confidential settlement agreement. (*Id.* at 1).

On June 20, 2024, Plaintiff filed a letter in response to the Court's June 4, 2024 Letter Order stating that, as the Court noted, it filed a motion to approve a consent judgment without having reported that the case settled and "inadvertently failed to file a proposed [o]rder of [d]ismissal upon reaching a settlement with [D]efendants in or about June 2023[,]" which "would have requested that this Court retain jurisdiction over this matter to enforce the terms of the

4

[s]ettlement [a]greement." (D.E. No. 10 at 1). Plaintiff stated that in light of this, it did not intend to refile its motion to approve a consent judgment, but instead requested the Court's permission to file a request for entry of default and subsequently to file a motion for default judgment against Defendants. (*Id.* at 1–2). Plaintiff noted that while the parties reached a settlement in this matter, Defendants have not paid the full settlement amount to Plaintiff, and thus Plaintiff has not released its underlying claims against them and is entitled to proceed with its original causes of action set forth in the Complaint. (*Id.* at 1). On June 21, 2024, the Court granted Plaintiff's request for permission to file a request for entry of default and subsequently a motion for default judgment against Defendants. (D.E. No. 11).

On June 23, 2024, Plaintiff filed a letter requesting the Clerk's Entry of Default against Defendants. (D.E. No. 12). The next day, the Clerk of Court entered default against Defendants. On July 19, 2024, Plaintiff filed the instant Motion for Default Judgment against Defendants. (Mot.; D.E. No. 16-1 ("Mov. Br."); *see also* D.E. No. 16-2 (Certification of Bryan P. Couch, Esq. in Support of Plaintiff's Motion ("Couch Cert.")); D.E. No. 16-3 (Affidavit of Kendra Mallet in Support of Plaintiff's Motion ("Mallet Aff.")); D.E. No. 16-4 (Proposed Final Judgment by Default); D.E. No. 16-5 (Certificate of Service)). A copy of this Motion and all supporting papers were served on Defendants via regular and certified mail. (D.E. No. 16-5). As of the date of this Opinion, Defendants have not appeared in this action nor responded to Plaintiff's Motion.

On March 19, 2025, the Court entered a Text Order noting a discrepancy between the address listed for Ahir in the Complaint and the address listed for Ahir on the filed proof of service and requesting Plaintiff to submit a supplemental letter to the Court to confirm that service of process was properly effectuated on Ahir. (D.E. No. 18). On March 28, 2025, Plaintiff filed a supplemental letter clarifying that the Brea, California address listed for Ahir in the Complaint was

5

based on information found in Plaintiff's file from when Defendants applied for a franchise back in 2017, but that through investigation in December 2022, the process server confirmed that Ahir's then-current residence was the Yorba Linda, California address reflected on the proof of service. (D.E. No. 19 at 1). On January 11, 2023, Ahir was served via Ketty Ahir who identified herself as Ahir's spouse at their residence in Yorba Linda, California. (*Id.*; *see also* D.E. No. 5). Plaintiff asserts that this service was proper and compliant with Federal Rules of Civil Procedure 4(e)(2) and 4(h)(1)(B). (D.E. No. 19 at 1–2). As further proof that Ahir was properly served, Plaintiff also attached email correspondence with Ahir's prior counsel, sent in connection with this action, and reflecting that Plaintiff provided Ahir's prior counsel with an extension of time to answer the Complaint. (*See id.* at 2–7 & Ex. A).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default proceedings and permits a plaintiff, following entry of default, to seek default judgment against a defendant who fails to answer or otherwise respond to a pleading. Fed. R. Civ. P. 55(b). The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who does not file a timely responsive pleading. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Although cases are to be decided on their merits where practicable, whether to grant a motion for default judgment is "largely a matter of judicial discretion." *Id.* In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Id.* at 535–36 (citations omitted).

Before granting default judgment, "the Court must determine (1) whether there is sufficient

proof of service, (2) whether a sufficient cause of action was stated, and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted). Additionally, the Court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Super 8 Worldwide, Inc. v. Mahesh, Inc.*, No. 18-16336, 2019 WL 3244878, at *2 (D.N.J. July 19, 2019) (quoting *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015)). "Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages." *Moroccanoil, Inc.*, 2015 WL 6673839, at *1 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Further, the Court must "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### III.    DISCUSSION

#### A.    Subject Matter Jurisdiction

District courts have original subject matter jurisdiction in civil actions when the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). For individuals, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation.'" *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its

principal place of business." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). However, "the citizenship of an LLC is determined by the citizenship of its members." *Id.* (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).

The amount in controversy is determined by the amount pled in the complaint, unless it is apparent to a legal certainty that the plaintiff cannot recover that amount. *See Huber v. Taylor*, 532 F.3d 237, 243 (3d Cir. 2008) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). In making this determination, "[t]he temporal focus of the court's evaluation . . . is on the time that the complaint was filed." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (alterations in original) (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)). Thus, "events occurring subsequent to the filing of the complaint that reduce the amount in controversy below the statutory limit do not oust the court's jurisdiction." *Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts & Serv., Inc.*, 705 F.2d 685, 687 (3d Cir. 1983); *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90.

Here, Plaintiff is a corporation incorporated in Delaware with its principal place of business in New Jersey. (Compl. ¶ 1). MH is an LLC, and upon information and belief, Ahir is the one and only member of MH. (*Id.* ¶¶ 2 & 4). Ahir is a citizen of California (*id.* ¶ 3), and thus MH is likewise a citizen of California. Additionally, Plaintiff pled it is owed $209,202.84 in liquidated damages and $48,247.06 in additional fees resulting from Defendants' alleged conduct, which is well above the required $75,000. (*See id.* ¶¶ 34, 43, 47 & 52; *see also* Mallet Aff. ¶ 25).

Thus, the Court finds it has subject matter jurisdiction over this action because the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

### B. Personal Jurisdiction

"The United States Supreme Court has held that a contractual consent to personal

jurisdiction should be enforced unless it would be unreasonable or unjust to do so." *Knights Franchise Sys., Inc. v. Patel*, No. 16-1707, 2017 WL 5191805, at *3 (D.N.J. Nov. 9, 2017) (quoting *Park Inn Int'l, LLC v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000)). In *Knights Franchise*, the district court found the parties' contractual consent "to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey" constituted a valid consent to personal jurisdiction and venue in New Jersey. *Id.*

Here, the Franchise Agreement specifically states that MH expressly consents and waives its "objection to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies under this Agreement[.]" (Compl. ¶ 6 & Ex. A § 17.6.3). Similarly, Ahir consented to personal jurisdiction and venue through the Guaranty, in which he personally agreed to be bound by Section 17 of the Franchise Agreement. (*Id.* ¶ 7 & Ex. C). Like the *Knights Franchise* court, this Court "sees no reason why this freely agreed-upon consent to personal jurisdiction in New Jersey should not be enforced." *See Knights Franchise*, 2017 WL 5191805, at *3; *see also Nat'l Equip. Rental, Ltd. v. Szukhert*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court.").

Therefore, the Court finds it has personal jurisdiction over Defendants.

### C. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Maretz v. Grabato*, No. 22-4045, 2023 WL 3098486, at *1 (D.N.J. Apr. 26, 2023) (quoting *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-0624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)). Federal Rule of Civil Procedure 4 permits service upon an individual or corporate defendant by "following state law for serving a summons in an

action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h). "Under New Jersey law, personal service is the primary method of effecting service." *Just Vacations Inc. v. Labkovsky*, No. 24-1603, 2024 WL 3728070, at *2 (D.N.J. Aug. 8, 2024) (citing N.J. Ct. R. 4:4-4(a), 4:4-5(a)). "Substitute or constructive service is permissible, however, when personal service within the state cannot be effected." *Id.* (citing N.J. Ct. R. 4:4-4(b), 4:4-5(a)). For example, New Jersey law permits service by mail when "despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule." N.J. Ct. R. 4:4-4(b)(1).

Here, the Court finds Plaintiff properly served both Defendants on January 11, 2023, by personally serving Mani Hotels via its authorized registered agent, Bhakta & Associates, PLLC, in Peoria, Arizona, *see* Fed. R. Civ. P. 4(h), and by personally serving Ahir via his spouse at their residence in Yorba Linda, California, *see* Fed. R. Civ. P. 4(e)(2). (*See* D.E. Nos. 5 & 19; *see also* Mov. Br. at 5).

Therefore, the Court finds that Defendants were properly served.

D.   **Sufficiency of the Complaint's Allegations**

Here, Plaintiff brings a breach of contract claim against Defendants. (*See generally* Compl.; *see also* Mov. Br. at 5–6). In New Jersey, to state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *see also DeCozen Chrysler Jeep Corp. v. Fiat Chrysler Automobiles, LLC*, No. 22-0068, 2025 WL 822995, at *3 (D.N.J. Mar. 13, 2025) ("To state a claim for breach of contract under New Jersey law, a plaintiff must allege facts demonstrating '(1) the existence of a valid contract; (2) that plaintiff performed under the contract;

(3) the defendant's breach of the contract; and (4) damages resulting from the breach.'" (citation omitted)); *Goldfarb v. Solimine*, 245 A.3d 570, 577 (2021) (same) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57 (N.J. 2016)).[3]

Here, Plaintiff alleged that (i) it and MH entered into a valid contract, the Franchise Agreement, and Ahir provided Plaintiff with a valid Guaranty of MH's obligations under the Franchise Agreement (Compl. ¶¶ 9 & 19); (ii) MH breached the Franchise Agreement when it stopped operating the Facility as a Days Inn® guest lodging facility and failed to pay Plaintiff the liquidated damages and outstanding Recurring Fees (*id.* ¶¶ 35, 43–44 & 47); (iii) Ahir breached the Guaranty by failing to pay the liquidated damages owed to Plaintiff pursuant to the Guaranty's terms (*id.* ¶¶ 20–21, 50 & 52); (iv) Plaintiff suffered resulting damages in the amount of $209,202.84,[4] plus outstanding Recurring Fees in the amount of $48,247.06 (*id.* ¶¶ 23, 36, 40, 43 & 47–48, 52); and (v) Plaintiff performed all of its obligations under the Franchise Agreement (*id.* ¶ 25). (*See* Mov. Br. at 5–7; Mallet Aff. ¶¶ 17–29).

Therefore, the Court finds that Plaintiff has sufficiently alleged a cause of action for breach of contract and that the threshold requirements for default judgment have been met. The Court

---

[3] The Court notes that some New Jersey courts state the elements of a breach of contract claim as a three-part (rather than four-part) test, excluding the prong stating that the claimant has to show it performed its own obligations. *See, e.g.*, *Fin. Servs. Vehicle Tr. ex rel. BMW Fin. Servs. NA, LLC v. Keitt*, No. 23-23188, 2025 WL 670014, at *3 (D.N.J. Mar. 3, 2025) ("[T]o state a claim for breach of contract under New Jersey law, a plaintiff must establish that (1) a valid contract exists between the parties, (2) the defendant failed to perform its obligations under that contract, and (3) the plaintiff suffered damages as a result." (citation omitted)); *Wedgewood Gardens Condo. Ass'n, Inc. v. Wedgewood Gardens Devs., Inc.*, No. A-0699-23, 2025 WL 400761, at *6 (N.J. Super. Ct. App. Div. Feb. 5, 2025) ("A cause of action exists for breach of contract when the plaintiff can demonstrate that there exists 'a valid contract, defective performance by the defendant, and resulting damages.'" (citation omitted)). However, as explained herein, the Court finds that Plaintiff sufficiently states a claim for breach of contract against Defendants under either version of the test.

[4] Plaintiff states "[t]he parties entered into a confidential settlement agreement on or about June 13, 2023, in which [D]efendants agreed to joint and severally pay a sum certain to [Plaintiff]." (Mov. Br. at 7 n.2; Mallet Aff. at 5 n.1; Couch Cert. ¶ 6). Plaintiff also states Defendants made a partial payment to it but have not fulfilled the remaining payment obligations of the settlement agreement. (Mov. Br. at 7 n.2; Mallet Aff. at 5 n.1; Couch Cert. ¶ 7). In its Motion, Plaintiff adjusted the $209,202.84 amount of liquidated damages it is seeking to $157,619.04 to credit Defendants' partial payment of $51,583.80. (Mov. Br. at 7 n.2; Mallet Aff. at 5 n.1 & ¶ 26; Couch Cert. at 2 n.1).

now turns to determining liability and damages.

### E. Liability & Appropriateness of Default Judgment

To determine whether granting default judgment is proper, the Court must make factual findings regarding "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177. The Court concludes that absent any responsive pleadings from Defendants, and based on the facts alleged in the Complaint, meritorious defenses do not appear to be available to Defendants. Additionally, the Court finds that Plaintiff "will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant[s]." *Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012). Further, the Court finds Defendants are culpable because they have been served with notice of this action, a copy of the Complaint, and a copy of Plaintiff's Motion but have failed to appear or participate in this action to date. Defendants are not infants or otherwise incompetent, and as to Ahir, he is also not presently engaged in military service to the Court's knowledge. (*See* Couch Cert. ¶ 12 & Ex. B); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

Therefore, the Court finds entry of default judgment against Defendants is proper. Accordingly, Plaintiff's Motion is **GRANTED** as to Defendants' liability.

### F. Damages

"Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages." *Moroccanoil, Inc.*, 2015 WL 6673839,

12

at *2 (citing *Comdyne*, 908 F.2d at 1149). Here, Plaintiff requests that the Court enter default judgment against Defendants liquidated damages in the amount of $221,901.75 as of August 19, 2024. (Mov. Br. at 6–7; Mallet Aff. ¶¶ 19–29). This damages amount sought includes $157,619.04[5] in unpaid liquidated damages under the Franchise Agreement, plus an additional $64,282.71 in interest purportedly owed from May 15, 2022—i.e., thirty days from the date of MH's termination of the Franchise Agreement—to August 19, 2024, the return date of the instant Motion. (*See* Mov. Br. at 7; Mallet Aff. ¶¶ 12 & 25–29). The Court understands that the liquidated damages amount was calculated in accordance with the formulas set forth in Section 7, Section 18.1, and Schedule C of the Franchise Agreement (*see* Mov. Br. at 2 & 6–7; Mallet Aff. ¶¶ 19–29 & Ex. A), and that the interest amount was calculated in accordance with the formula set forth in Section 7.3 of the Franchise Agreement (*see* Mov. Br. at 2 & 6–7; Mallet Aff. ¶¶ 7, 28 & Ex. A). In support of the damages sought, Plaintiff submitted a sworn affidavit of its Vice President of Global Franchise Administration. (*See generally* Mallet Aff.). However, Plaintiff did not submit any invoices, itemized statements, or other documentary evidence in support of the $221,901.75 damages amount it seeks. The Court finds the sworn affidavit alone, without the supporting documentary evidence, is insufficient to justify Plaintiff's Motion as to damages. *See, e.g.*, *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 606 (D.N.J. 2016) (denying in part without prejudice a motion for default judgment where the plaintiff submitted an affidavit in support of its damages but "ha[d] not cited to any invoices or other documentary evidence to support its damages claim with respect to the amount it is owed by [d]efendants[,]" which the court found as "insufficient to justify [p]laintiff's motion as to damages"); *Mapssy Int'l, Inc. v. Hudson*

---

[5] This amount credits Defendants' partial payment of $51,583.80 made to Plaintiff in connection with the parties' confidential settlement agreement. (*See* Mov. Br. at 7; Mallet Aff. ¶ 26 & n.1).

*Valley Trading Inc.*, No. 08-3037, 2012 WL 4889229, at *6 (D.N.J. Oct. 11, 2012) (denying in part a motion for default judgment where the court concluded that the plaintiff asserted a specific damages amount based on a breach of contract but "ha[d] not submitted documentation to support" that amount, and stated it would enter a damages judgment "[u]pon receipt of memoranda and proof of [the] [d]efendant's outstanding debts"); *Mancuso v. Tyler Dane, LLC*, No. 08-5311, 2012 WL 1536210, at *3 (D.N.J. May 1, 2012) (granting plaintiffs' motion for default judgment in part as to liability but reserving its decision on damages "because [p]laintiffs lack sufficient evidentiary support to justify their damages" and "never offered any proof of monetary damages" and thus ordering plaintiffs to "provide the Court with additional information justifying the damages they seek").

Therefore, Plaintiff's Motion is **RESERVED** as to the determination on the amount of damages sought, based on insufficient evidence submitted in support of that amount. Thus, the Court directs Plaintiff to, within thirty (30) days of the date of this Opinion, submit documentary evidence (e.g., invoices or itemized statements) supporting the $221,901.75 damages amount it seeks. In that supplemental submission, Plaintiff shall also clarify whether the $64,282.71 interest amount it seeks includes, or is separate and apart from, the $48,247.06 outstanding Recurring Fees amount referenced in Plaintiff's Complaint (*see* Compl. ¶¶ 43, 47 & 52), and if the former, why the amount is increased in the Motion, and if the latter, whether Plaintiff is still seeking to recover the $48,247.06 Recurring Fees amount in addition to the liquidated damages and interest it seeks.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's unopposed Motion for Default Judgment against Defendants is **GRANTED IN PART and RESERVED IN PART**—Plaintiff's Motion is **GRANTED** as to Defendants' liability but is **RESERVED** as to the determination on the amount

of damages, which decision will be held in abeyance pending receipt of documentary evidence in support of the amount of damages sought. An appropriate Order follows.


**Dated: June 4, 2025**                                    *s/ Esther Salas*
                                                           **Esther Salas, U.S.D.J.**

15